**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| US DEALER LICENSE, LLC and ANIK SHAH, | ) ) ) | |
| *Plaintiffs*, v. | ) ) ) ) | No. 19 C 3471 |
| US DEALER LICENSING LLC and RICHARD DANDINO, | ) ) ) ) | Judge Virginia M. Kendall |
| *Defendants*. | | |

**MEMORANDUM OPINION AND ORDER**

This is a breach of contract dispute stemming from the Plaintiffs' purchase of Defendants' businesses. Defendants now move to partially dismiss the complaint. The motion to dismiss [Dkt. 27] is granted. Counts II, III, IV, V, VI, and VII are dismissed without prejudice. If Plaintiffs wish to file an amended complaint, they must do so within 28 days of the entry of this order.

**BACKGROUND**

On a motion to dismiss under Rule 12(b)(6), the Court accepts the complaint's well-pleaded factual allegations, with all reasonable inferences drawn in the non-moving party's favor, but not its legal conclusions. *See Smoke Shop, LLC v. United States*, 761 F.3d 779, 785 (7th Cir. 2014). The facts below are drawn from Plaintiffs' Amended Complaint (Dkt. 24).

Defendant Richard Dandino operated a business that facilitated wholesale automobile dealership licenses for auto dealerships in Michigan and Missouri. (Dkt. 24 ¶¶ 4, 6.) The business consisted of setting up dealership entities, providing office space, providing logistical support, and assisting with dealership licensing, administrative functions, and books and records for auto dealership customers. (*Id.* ¶ 7.) Defendant US Dealer Licensing LLC ("Licensing LLC")

1

performed these services in Missouri, and another entity, USDL Services LLC ("USDL"), performed the same services in Michigan. (*Id.* ¶ 8.)

In April 2018, Plaintiff Anik Shah and his associate, Edward Bergmann, began negotiating with Dandino to purchase the operations and assets of Licensing LLC and USDL. (*Id.* ¶ 5.) Shah and Bergmann agreed to purchase both entities and they set up an Indiana LLC called US Dealer License LLC ("US Dealer") to facilitate the purchase. (*Id.* ¶ 13.) On May 1, 2018, US Dealer entered into an asset purchase agreement (the "Purchase Agreement") with Licensing LLC and USDL. (*Id.* ¶ 14, *see also id.* at 14-22.) US Dealer purchased all aspects of Licensing LLC and USDL except for certain real estate holdings in Indiana, which were subject to a lease agreement between the parties. (*Id.*) The purchase price was $1,250,000.00, which was separated into two payments: $1,150,000 in cash at closing, and a promissory note secured by Shah for the additional $100,000 made payable to Dandino. (*Id.* ¶¶ 15-16; *see also id.* at 37-39.)

During the sale negotiations, Dandino told Shah and Bergmann that the Missouri business had customers and was operational, but that they would have to get the Michigan business up and running. (*Id.* ¶ 10.) In the Purchase Agreement, Defendants represented that at the time of execution, "there [were] no actions, suits, or proceedings pending, or, to the Seller's knowledge, threatened or anticipated before any court or governmental or administrative body or agency affecting these assets." (*Id.* ¶ 19; *see also id.* at 27, § G(4)). Unbeknownst to Plaintiffs, however, there were "regulatory and licensing decisions against clients of Defendants in Missouri" at the time the Purchase Agreement was executed. (*Id.* ¶ 22.) In fall 2017, the Missouri Department of Revenue determined that Licensing LLC's client applicants were denied franchise auto dealership licenses because the rented space and services offered by Licensing LLC did not satisfy Missouri licensing requirements. (*Id.*) Licensing LLC's clients were actively litigating and seeking

declaratory relief in Missouri to challenge the Department of Revenue's licensing denials. (*Id.* ¶ 23.) Dandino was aware of the ongoing litigation at the time the Purchase Agreement was executed, but he never told Plaintiffs about any pending or threatened litigation or regulatory actions affecting Licensing LLC's or USDL's ability to operate in Missouri or Michigan. (*Id.* ¶¶ 20, 25-28.) Dandino was aware that one of his employees had been deposed in connection with the litigation and he was aware that Licensing LLC's clients had requested that Licensing LLC pay their attorneys' fees. (*Id.*) Dandino retained legal counsel in Missouri to represent Licensing LLC and its customers in the declaratory relief litigation, and he was receiving copies of legal filings as early as October 2017. (*Id.* ¶ 30.)

The declaratory judgment litigation was ultimately unsuccessful, and at least seven of Licensing LLC's clients were denied dealership franchise licenses. (*Id.* ¶ 32.) The result of the litigation "effectively ended" Licensing LLC's ability to operate in Missouri. (*Id.* ¶ 33.) The ability of Licensing LLC and USDL to operate in Missouri and Michigan was a material and principal consideration Plaintiffs relied on in executing the Purchase Agreement. (*Id.* ¶ 21.) If Shah and Bergmann had been aware of the Missouri litigation and its impact on Licensing LLC's ability to operate, they would not have executed the Purchase Agreement on the terms specified. (*Id.* ¶ 36.) Plaintiffs suffered significant financial loss as a result of Dandino's failure to disclose the Missouri litigation before the sale. (*Id.* ¶ 37.)

Dandino personally negotiated and made all material representations to Plaintiffs regarding the assets at issue and the terms of the Purchase Agreement and accompanying promissory note. (*Id.* ¶ 39.) After the sale, Dandino withdrew all the money paid from the Purchase Agreement, transferred it to personal accounts, and "effectively shut down Licensing [LLC]." (*Id.* ¶ 41.) While

3

running Licensing LLC, Dandino co-mingled personal and business funds and failed to operate the business as a separate legal entity from his personal transactions. (*Id.* ¶ 42.)

Plaintiffs now bring claims against Licensing LLC for breaching the Purchase Agreement (Count I), and, alternatively, promissory estoppel (Count III) and unjust enrichment (Count V). Plaintiffs also bring claims against Dandino for breaching the promissory note (Count II), fraud (Count VII)[1], and, alternatively, promissory estoppel (Count IV) and unjust enrichment (Count VI).

## LEGAL STANDARD

On a motion to dismiss under Rule 12(b)(6), the Court construes the complaint in the light most favorable to the plaintiff, accepts the factual allegations as true, and draws all reasonable inferences in the plaintiff's favor. *Reynolds v. CB Sports Bar, Inc.*, 623 F.3d 1143, 1146 (7th Cir. 2010). A complaint need contain only a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). That statement must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), and raise a right to relief above the speculative level. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). However, a plaintiff's claim need only be plausible, not probable. *Indep. Trust Corp. v. Stewart Info. Servs. Corp.*, 665 F.3d 930, 935 (7th Cir. 2012). Evaluating whether a plaintiff's claim is sufficiently plausible to survive a motion to dismiss is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011) (citing *Iqbal*, 556 U.S. at 678).

---

[1] The complaint contains two counts labeled "Count VI." The Court will refer to the second Count VI, fraud against Dandino, as Count VII.

Rule 9(b) requires a party alleging fraud to "state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). This "ordinarily requires describing the 'who, what, when, where, and how' of the fraud, although the exact level of particularity that is required will necessarily differ based on the facts of the case." *AnchorBank, FSB v. Hofer*, 649 F.3d 610, 615 (7th Cir. 2011) (citation omitted); *see also Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 737 (7th Cir. 2014). Rule 9(b) applies to "all averments of fraud, not claims of fraud." *Borsellino v. Goldman Sachs Grp., Inc.*, 477 F.3d 502, 507 (7th Cir. 2007). "A claim that 'sounds in fraud'— in other words, one that is premised upon a course of fraudulent conduct—can implicate Rule 9(b)'s heightened pleading requirements." *Id.*

## DISCUSSION

Defendants now move under Rules 12(b)(6) and 9(b) to dismiss the breach of contract and fraud claims against Dandino and the unjust enrichment and promissory estoppel claims against both Defendants. Defendants are not moving to dismiss the breach of contract claim against Licensing LLC and they answered that claim. *See* Dkt. 29.

As an initial matter, though both parties rely on Illinois law in their briefs, both the Purchase Agreement and the promissory note contain Indiana choice-of-law provisions. *See* Dkt. 24 at 34, § K(6); *see also id.* at 39 § IX. As a federal court sitting in diversity, the Court applies the choice-of-law rules of the forum state (here, Illinois) to determine which state's substantive law applies. *NewSpin Sports, LLC v. Arrow Elecs., Inc.*, 910 F.3d 293, 300 (7th Cir. 2018). Illinois courts generally enforce contractual choice-of-law provisions. *Id.* (citing *Philips Elecs., N.V. v. N.H. Ins. Co.*, 692 N.E. 2d 1268, 1278 (Ill. App. Ct. 1998). The terms of the Indiana choice-of-law provisions in these agreement are clear, so Indiana substantive law applies to this dispute. *See, e.g.*, *id.*, (applying Illinois choice-of-law rules and determining that New York substantive law

applies to contract claims); *see also Auto-Owners Ins. Co. v. Websolv Computing Inc.*, 580 F.3d 543, 547 (7th Cir. 2009) (courts are to "honor reasonable choice-of-law stipulations in contract cases").

### A. Breach of Contract Against Dandino

Defendants move to dismiss the breach of contract claim against Dandino because he is not a party to the Purchase Agreement. They also argue that, to the extent Plaintiffs seek to hold Dandino liable for breach of contract arising from the promissory note between Dandino and Shah, that claim fails for two reasons: first, the promissory note is incorporated by reference into the Purchase Agreement and is thus not a separate contract, and second, because plaintiffs fail to identify the term or provision of the promissory note that Dandino breached. For their part, Plaintiffs argue that Dandino's misrepresentations breached both the Purchase Agreement and the promissory note (even though he is a party only to the latter) and that Defendants are overly focused on form rather than substance. They also argue that the complaint alleges Dandino was operating Licensing LLC as an alter ego, which could allow them to eventually pierce the corporate veil and hold Dandino personally liable under the Purchase Agreement.

Plaintiffs are getting ahead of themselves. To the extent they seek to hold Dandino liable for breaching the Purchase Agreement, that is not the claim they brought. The complaint makes clear that the breach of contract claim against Dandino is based on the promissory note, not the Purchase Agreement. *See* Dkt. 24 ¶¶ 48-52 (Count II, "Breach of Contract (Dandino)") (alleging that "the . . . promissory note was a valid contract between Shah individually and Dandino individually . . . Shah fully performed all obligations required of him under the promissory note . . . Dandino's false representations of material fact regarding the status of Missouri operations was a material breach of said contract"). Plaintiffs will have another chance to plead their claims,

6

and if they intend to hold Dandino personally liable under the Purchase Agreement, they must amend their claims to that end.

As for the promissory note, Defendants first argue that Plaintiffs cannot bring a claim against Dandino for breaching the promissory note because it was incorporated by reference into the Purchase Agreement. Defendants seem to be arguing that because the promissory note was incorporated by reference, it is "part of" the Purchase Agreement and thus no longer functions as a standalone contract or binds the parties in any way. They do not cite any legal authority for this proposition, and the Court is not aware of any. Defendants simply reiterate that the promissory note was incorporated by reference and is thus "part of" the Purchase Agreement, which somehow means that Dandino is no longer bound by the terms of the promissory note. They do not attempt to explain *why* incorporation by reference makes the promissory note null and void, nor why Dandino is no longer bound by the promissory note simply because another contract references it. This argument is a non-starter.

Defendants next argue that Plaintiffs fail to state a claim against Dandino for breaching the promissory note because the Complaint does not identify which specific provision was breached. In response, Plaintiffs do not identify any particular provision and instead point to the general "fraudulent misrepresentations" alleged in the complaint and the "totality of allegations," which they contend "put [] Defendants on notice of what the alleged breach is." (Dkt. 36 at 6.)

Under Indiana law, "[t]he elements of a breach of contract claim are the existence of a contract, the defendant's breach, and damages to the plaintiff." *WESCO Distrib., Inc. v. ArcelorMittal Indiana Harbor LLC*, 23 N.E.3d 682, 695 (Ind. Ct. App. 2014). Though Indiana law applies to the substance of Plaintiffs' contract claims, "a federal court sitting in diversity applies federal pleading requirements 'even when the claim pleaded arises under state rather than

7

federal law.'" *Windy City Metal Fabricators & Supply, Inc. v. CIT Tech. Fin. Servs., Inc.*, 536 F.3d 663, 670 (7th Cir. 2008). And courts in this district are split regarding whether a plaintiff must identify the specific provisions of the contract it alleges the defendant breached. *See Peerless Network, Inc., v. MCI Commc'n Servs., Inc.*, No. 14 C 7417, 2015 WL 2455128, at *5 (N.D. Ill. May 21, 2015) (citing cases.) A majority of courts in the district have found that a plaintiff is not required to cite a specific contract provision, "but must at least place the defendant on fair notice of the contractual duty it breached." *Starke v. Select Portfolio Servicing, Inc.*, No. 17 C 4123, 2017 WL 6988657, at *2 (N.D. Ill. Dec. 18, 2017) (citing *Peerless*). Plaintiffs fall short of that threshold as well, and so the breach of contract claim against Dandino is dismissed without prejudice. The Complaint does not identify any contractual duty arising from the promissory note that Dandino breached. If Plaintiffs opt to amend their complaint, they must plead enough facts about the promissory note and tie their allegations to the promissory note to give Defendants notice of the contractual duty that Dandino supposedly breached. *See, e.g., Sumi Cho v. Rosato Perea*, No. 18 C 8117, 2019 WL 4645419, at *11 (N.D. Ill. Sept. 24, 2019) ("although [Plaintiff] attaches the [contract] to her complaint and alleges various acts undertaken by Defendants, she fails to set forth facts establishing that Defendants' actions actually breached duties that they owed to her under the [contract] . . . [Plaintiff's] complaint does not tie her allegations to any obligation set forth in the [contract]"); *Hughes v. Sw. Airlines Co.*, No. 18 C 5315, 2019 WL 1375927, at *3 (N.D. Ill. Mar. 26, 2019) (dismissing breach of contract claim where plaintiff failed to "provide[] sufficient detail in his complaint to put [Defendant] or the Court on notice of the contractual duty that [Defendant] breached").

### B. Unjust Enrichment and Promissory Estoppel

Plaintiffs bring unjust enrichment and promissory estoppel claims against both Licensing LLC and Dandino. Defendants argue that Plaintiffs cannot bring these claims if they involve the same subject matter as the breach of contract claims. Plaintiffs contend they are allowed to bring these quasi-contract claims in the alternative, though Plaintiffs acknowledge that they cannot proceed with these claims if and when a contract is found to exist addressing the same subject matter.

To plead contract and quasi-contract claims in the alternative, "a plaintiff must claim *both* that a contract was breached and that a contract did not exist but equity demands that the injury be compensated." *CoMentis, Inc. v. Purdue Research Found.*, 765 F. Supp. 2d 1092, 1103 (N.D. Ind. 2011). "A party cannot pursue equitable relief simply because its contract claim fails, without alternatively alleging that there was either no contract on point or the contract at issue was unenforceable." *Id.* Plaintiffs never allege that contracts did not exist between the parties or that the contracts are unenforceable, so their unjust enrichment and promissory estoppel claims fail for that reason. What's more, Defendants admit that a contract exists between Plaintiff US Dealer and Defendant Licensing LLC. *See* Dkt. 29 ¶ 14 (admitting that US Dealer and Licensing LLC "entered into a contract titled, "Asset Purchase Agreement"). If "parties stipulate that there is a valid, enforceable contract that governs this dispute, [plaintiff's] equitable claims must be dismissed." *Duke Energy of Ind., Inc. v. Comcast of Indianapolis, LP*, No. 14 C 2041, 2015 WL 5554050, at *3 (S.D. Ind. Sept. 21, 2015). Because Defendant Licensing LLC has admitted as much, the promissory estoppel and unjust enrichment claims against it are dismissed. However, because the Court could later find that the Purchase Agreement is unenforceable, the claims are dismissed without prejudice to allow for refiling, should the Court later make such a finding.

Though Dandino has not acknowledged that a valid, enforceable contract governs this dispute, the promissory estoppel and unjust enrichment claims against him are dismissed without prejudice for the pleading deficiencies discussed above.

**C.    Fraud**

Finally, Plaintiffs bring a common-law fraud claim against Dandino.  Defendants argue Plaintiffs fail to plead fraud with the heightened particularity required by Fed. R. Civ. P. 9(b) and fail to plead that the misrepresentations were made with intent to deceive.

Under Indiana law, the "essential elements of common law fraud are: (1) a material representation of past or existing facts which; (2) was false; (3) was made with knowledge or reckless ignorance of its falsity; (4) was made with intent to deceive; (5) was rightfully relied upon by the complaining party; and (6) proximately caused injury to the complaining party." *Kruse v. GS Pep Tech. Fund 2000 LP*, 897 F. Supp. 2d 769, 778 (N.D. Ind. 2012) (citing *Am. Heritage Banco, Inc. v. McNaughton,* 879 N.E.2d 1110, 1115 (Ind. Ct. App. 2008)).  As to Defendants' particularity argument, Plaintiffs have done more than enough to provide Defendants with notice of their claims and allow Defendants to prepare an effective defense, which is the ultimate purpose of Rule 9(b). *See Rocha v. Rudd*, 826 F.3d 905, 911 (7th Cir. 2016) ("fair notice is the most basic consideration underlying Rule 9(b)") (quotations omitted).  The precise level of particularity required under Rule 9(b) depends on the facts of the case, and courts should not "take an overly rigid view" of the "who, what, when, where, and how" formulation. *AnchorBank, FSB v. Hofer*, 649 F.3d 610, 615 (7th Cir. 2011).  Plaintiffs have alleged enough detail about Dandino's misrepresentations regarding the Missouri litigation to put Defendants on notice of the fraud claim.  However, as Defendants correctly point out, Plaintiffs failed to allege an essential element of a common law fraud claim under Indiana law—that the misrepresentations were made with intent

10

to deceive.  *See Kruse*, 897 F. Supp. 2d at 778.  The fraud claim is thus dismissed without prejudice, but it will be allowed to proceed if this simple issue is remedied in an amended complaint.

## CONCLUSION

For the reasons stated here, the motion to dismiss [Dkt. 27] is granted.  Count II (breach of contract against Dandino), Count III (promissory estoppel against Licensing LLC), Count IV (promissory estoppel against Dandino), Count V (unjust enrichment against Licensing LLC), and Count VI (unjust enrichment against Dandino), and Count VII (fraud against Dandino) are dismissed without prejudice.  If Plaintiffs wish to file an amended complaint, they must do so within 28 days of the entry of this order.

_____
Hon. Virginia M. Kendall
United States District Judge

Date: December 23, 2019